UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Margaret Eskridge,

    *Plaintiff,*

v.

The Dufresne Spencer Group LLC, f/k/a
DSG Illinois, LLC,

    *Defendant.*

No. 22 CV 4998

Judge Lindsay C. Jenkins

MEMORANDUM OPINION AND ORDER

Margaret Eskridge worked as a senior sales associate for Dufresne Spencer Group LLC. During the COVID-19 pandemic, Dufresne required in-person employees to wear masks at work. Eskridge did so until January 2021, when anxiety prevented her from masking. Dufresne told Eskridge that she could not return to work without masking, denied her request for several months of medical leave, and terminated her employment. Eskridge sued Dufresne under the Americans with Disabilities Act ("ADA") and the Family and Medical Leave Act ("FMLA"), and both parties move for summary judgment. [Dkt. 26, 29.] Eskridge was not eligible for FMLA leave, was not a qualified individual under the ADA, and was not fired in retaliation for asserting FMLA or ADA rights. Dufresne's motion for summary judgment is therefore granted, and Eskridge's motion is denied.

## I.    Background

The Court draws on the parties' Local Rule 56.1 statements to recount the facts at issue, which are undisputed except where otherwise noted. Because both parties have moved for summary judgment, when evaluating each motion, the Court must

view the record in the light most favorable to the nonmovant. *See Frazier-Hill v. Chi. Transit Auth.*, 75 F.4th 797, 802 (7th Cir. 2023). As explained below, if the Court views the record in Eskridge's favor, Dufresne is entitled to summary judgment, so it is apparent that if the Court views the record in Dufresne's favor, Eskridge's motion must be denied. Therefore, rather than present two versions of the record, the Court presents disputed facts in the light most favorable to Eskridge.

## A.    Eskridge's Employment with Dufresne

Dufresne operates Ashley Homestore furniture stores throughout the country. [Dkt. 36 ¶ 1.] In 2020, Margaret Eskridge worked as a senior sales associate at an Ashley Homestore in Joliet, Illinois. [*Id.* ¶¶ 7–8.] According to Eskridge's job description, "interacting with customers in a retail environment" was an essential function of her position. [*Id.* ¶ 7.] In May 2020, after the onset of the COVID-19 pandemic, Dufrene required its in-person employees to wear masks while working indoors within six feet of other individuals. [*Id.* ¶ 8.][1] The State of Illinois and Will County likewise required indoor workers to wear masks during the relevant time period. [Dkt. 41 ¶ 2.] Dufresne's masking policy applied to Eskridge, who wore a mask every day she was at work until January 6, 2021, when she was sent home because she was experiencing COVID symptoms. [*Id.* ¶¶ 9, 11.]

According to Dufresne, human resources employee Jeanette Miller contacted Eskridge on January 11, 2021, and Eskridge said that she would not be able to wear

---

[1]    Dufresne notes that its policy required "cloth face coverings," not "masks." [*E.g.*, Dkt. 43 ¶ 8.] Viewing the record in Eskridge's favor, a reasonable jury could find that a "cloth face covering" is a "mask" and that Eskridge's reaction to wearing a "mask" was also triggered by wearing a cloth face covering. The Court uses these terms interchangeably.

a mask at work anymore. [*Id.* ¶ 12.] That afternoon, in an email to Ashley Sullivan, a human resources manager, Miller stated, in part:

> [Eskridge] stated that she cannot return to work wearing a mask due to her high anxiety but she knows masks are mandated. I asked her if she was resigning and she said no, but I know we will not have to wear that mask forever and stated that her doctor wants us to send over paperwork for her to fill out. I asked [Eskridge] what paperwork her doctor was referring to and she said she didn't know. I advised her that if she was referring to FMLA, I did not think this would qualify but would find out. I have reached out to Angela regarding the matter and Angela has confirmed that this would not qualify for FMLA. [Eskridge] says she cannot return to work wearing a mask. What is the status of this type of situation? I know a while ago there was a situation like this but I believe we ended up term[inating] the employee. This is not something we can provide reasonable accommodation forms for because we cannot accommodate "not wearing a mask", correct?

[Dkt. 31-9.] Sullivan responded, "If she is not able to wear a mask at work, then we would need to separate employment." [*Id.*] Miller emailed Eskridge shortly afterward:

> As discussed, unfortunately your circumstances of not being able to wear a mask does not qualify for FMLA. At this time, if you are unable to return to work due to not being able to wear a mask, we will have to separate employment.
>
> In the event that you can return to work and wear a mask, please send me a copy of your test results once received. If you choose not to return, please notify me by end of day tomorrow.

[Dkt. 31-11.] Eskridge responded that "as twice discussed with you today, my doctor will forward information regarding my anxiety." [*Id.*]

The next day, January 12, Eskridge's doctor, Surbhi Shah, faxed Dufresne a note asking that Eskridge be excused from work "from 1/12/21 to TBD" and stating that she "cannot tolerate masks at all, cannot breath[e], has severe anxiety wearing them." [Dkt. 36 ¶ 14.] Miller emailed Eskridge two days later to acknowledge receipt of the fax. She stated, "In order to discuss accommodation, we would need your doctor

to fill out the accommodation form that I have attached. Once completed and returned, we can discuss." [*Id.* ¶ 15; Dkt. 31-11.] Dr. Shah returned the form the next week. [Dkt. 36 ¶ 16.] When asked, "Is the employee able to perform the essential job functions of this position with or without reasonable accommodation as outlined in the position description below?" Dr. Shah checked "No." [*Id.*; Dkt. 31-13 at 1.] Dr. Shah estimated that Eskridge would be unable to perform her essential job functions for three to four months and would reevaluate in three months. [Dkt. 31-13 at 1.] When asked whether Eskridge suffered a physical or mental impairment, Dr. Shah checked "Yes" and explained: "Patient unable to tolerate masks, very anxious/panic attacks with those." [*Id.*] Dr. Shah stated that there were no schedule adjustments that could accommodate Eskridge's impairment because she "cannot work with mask on." [*Id.*] Dr. Shah responded "N/A" to all other items asking about accommodations. [*Id.* at 2.] Nor did Eskridge suggest any alternative accommodations. [Dkt. 41 ¶ 9.]

Dufresne states that based on Dr. Shah's response, it determined that Eskridge could not perform the essential functions of her position as a senior sales associate with or without accommodations, so the only possible accommodation was a transfer to a remote sales position. [Dkt. 36 ¶ 18.] On January 22, Sullivan asked whether the "E-Team" had any openings to which Eskridge could be transferred; she was told no, "[t]he only opportunities we have open will be in either the Houston or Memphis eCenters." [*Id.* ¶ 19; Dkt. 31-14.] Because Dufresne had no sales positions that did not require in-person interaction, Dufresne determined that it no positions to which it could transfer her. [Dkt. 36 ¶¶ 20–21.] Dufresne also believed that Eskridge was

4

not eligible for FMLA leave. [*Id.* ¶ 22.] On January 25, 2021, Miller called Eskridge to inform her that "due to her inability to mask, the fact that she did not qualify for FMLA, and the lack of availability of any reasonable accommodation," her employment would be terminated but that if her "restrictions change[d] or if the mask mandate were lifted, [she] was encouraged to reapply for a sales role." [*Id.*]

Eskridge disputes only a few points in the above narrative. [*See id.* ¶¶ 11–22.] She disputes Dufresne's account to the extent it implies that Miller first raised the possibility of FMLA leave, instead contending that she broached the topic. [*See id.* ¶¶ 11–13; Dkt. 31-5 ("Eskridge Dep.") at 33:18–20 ("I said, Is there any way that I can get FMLA? And [Miller] said, No. You don't qualify for it.").] Eskridge also testified that Miller told her that anxiety was not a condition that FMLA covered. [*See* Eskridge Dep. at 78:14–22 (indicating that Miller told Eskridge that, "[H]av[ing] anxiety, that's not a reason for you to have FMLA. … Your anxiety … is not going to allow you to get FMLA."); *see also* Dkt. 43 ¶ 10 (asserting that Dufresne did not give leaves of absence for individuals unable to work while wearing a mask).] Viewing the record in Eskridge's favor, a reasonable jury could conclude that she first asked about FMLA leave and that Miller told her that anxiety was not a covered condition. The Court proceeds under these assumptions.

Eskridge also asserts additional facts about her request for a leave of absence and her termination. Dufresne did not investigate her FMLA eligibility, and the only accommodation it considered was transferring Eskridge to a limited range of remote positions; Dufresne did not consider Dr. Shah's request that Eskridge receive several

months of leave or any alternative accommodation. [Dkt. 36 ¶¶ 11–13; *see also* Dkt. 43 ¶ 11 (asserting that Dufresne did not consider allowing employees to wear less restrictive face coverings).] Further, Sullivan did not consider Eskridge incapacitated for purposes of FMLA despite Dr. Shah's statement that she could not work while wearing a mask, and neither Sullivan nor Miller reviewed medical documentation in making that determination. [Dkt. 36 ¶¶ 18–22.] Finally, Dufresne did not engage in an interactive process regarding possible accommodations. [*Id.*]

## B. Eskridge's Anxiety Symptoms and Treatment

The details of Eskridge's treatment for anxiety are undisputed. On April 22, 2020, she had a visit with Dr. Shah during which she complained of panic attacks and shortness of breath. [*Id.* ¶ 23.] Dr. Shah diagnosed Eskridge with acute anxiety, but she did not link Eskridge's anxiety with mask wearing at that time or instruct her not to wear a mask. [*Id.*] Dr. Shah asked Eskridge to schedule a follow-up visit six weeks later, which Eskridge did not do. [*Id.*] Eskridge's next appointment with Dr. Shah was on January 8, 2021, when she "reported shortness of breath, essential hypertension, and panic attacks." [*Id.* ¶ 24.] Dr. Shah instructed Eskridge not to wear masks and asked her to set up a follow-up visit four weeks later; Eskridge did not schedule the follow-up visit. [*Id.*] Eskridge next saw Dr. Shah on September 20, 2022 for treatment related to a motor vehicle accident; she did not receive treatment for anxiety between January 8, 2021 and September 8, 2022. [*Id.* ¶ 25.]

Some of Eskridge's anxiety symptoms are also undisputed. Her symptoms were "almost exclusively" caused by masking and did not limit her when she did not have to wear a mask. [*Id.* ¶¶ 30–31.] She was never admitted for overnight treatment for

6

anxiety, and besides her inability to work for Dufresne while wearing a mask, she has never had to miss work related to her anxiety. [*Id.* ¶¶ 28–29.] Other aspects of Eskridge's anxiety are in dispute. Dufresne asserts that Eskridge's anxiety symptoms would manifest in the form of panic attacks that lasted several minutes, and after 20 minutes or so, she would be able to return to normal activities. [*Id.* ¶¶ 26–27, 32.] Eskridge asserts that her symptoms became progressively worse over the course of the pandemic, and she experienced a flare-up in January 2021 that made it difficult for her to breathe while wearing a mask. [*Id.*; *see* Dkt. 43 ¶¶ 13–15.]

### C.   This Litigation

Eskridge filed this lawsuit in September 2022, asserting an FMLA interference claim, claims for disparate treatment and failure to accommodate under the ADA, and retaliation claims under both statutes. [Dkt. 4.] Both parties have filed motions for summary judgment. [Dkt. 26, 29.]

## II.   Legal Standard

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Frazier-Hill*, 75 F.4th at 802. When considering cross-motions for summary judgment, the Court views the facts in the light most favorable to party against whom the motion under consideration is made. *Frazier-Hill*, 75 F.4th at 802. A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Birch|Rea Partners, Inc. v. Regent Bank*, 27 F.4th 1245, 1249 (7th Cir. 2022).

## III.    Analysis

As the Court noted above, viewing the record in the light most favorable to Eskridge, Dufresne is entitled to summary judgment. Therefore, it is apparent that if the Court views the record in the light most favorable to Dufresne, Eskridge is not entitled to summary judgment. In this section, the Court analyzes Dufresne's motion, viewing the record in favor of Eskridge.

### A.    FMLA Interference

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA. 29 U.S.C. § 2615(a)(1). To prevail on an FMLA interference claim, a plaintiff must show that (1) she was eligible for FMLA protections, (2) her employer was covered by the FMLA, (3) she was entitled to FMLA leave, (4) she provided sufficient notice to her employer, and (5) the employer's denial of or interference with the exercise of FMLA rights prejudiced her. *Ziccarelli v. Dart*, 35 F.4th 1079, 1084 (7th Cir. 2022). Dufresne argues that the undisputed facts establish that Eskridge was not entitled to leave under the FMLA. [Dkt. 30 at 3–6.] The Court agrees.

An employee is entitled to FMLA leave if the employee suffers from "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D); *see Guzman v. Brown County*, 884 F.3d 633, 638 (7th Cir. 2018). A "serious health condition" is "an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). Regulations in turn provide several

8

definitions of "continuing treatment," four of which may be relevant here. 29 C.F.R. § 825.115(a), (c)–(e). It is undisputed that Eskridge did not receive inpatient care for her anxiety, so she is not entitled to leave under 29 U.S.C. § 2611(11)(A). [Dkt. 36 ¶ 28.] Nor did Eskridge receive continuing treatment because she received treatment on only one occasion and did not receive a course of supervised treatment by a medical care. 29 U.S.C. § 2611(11)(B); 29 C.F.R. § 825.115.

It is undisputed that Eskridge saw Dr. Shah three times after being diagnosed with anxiety, in April 2020, January 2021, and September 2022. [Dkt. 36 ¶¶ 23–25.] The April 2020 visit cannot count toward continuing treatment for FMLA purposes because Eskridge was not incapacitated at that time. [*See id.* ¶ 29 (undisputed that January 2021 was the first time Eskridge's condition affected her ability to work).] As for the September 2022 visit, even if the gap between January 2021 and September does not break a period of continuity for FMLA purposes, the third visit was unrelated to Eskridge's anxiety. [*Id.* ¶ 25.] Thus, only the January 2021 visit could count toward a course of continuing treatment. That means Eskridge cannot rely on provisions that require two or more visits. *See* 29 C.F.R. § 825.115(c) (requiring at least two visits per year), § 825.115(e) (requiring multiple absences from work for treatment). And since Eskridge did not schedule the follow-up visit that Dr. Shah recommended [Dkt. 36 ¶ 24], and she offers no evidence that she received supervised treatment from another provider, she cannot rely on the other provisions. 29 C.F.R. § 825.111(a) (requiring two or more visits or "[t]reatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the

health care provider"), § 825.115(d) (requiring "continuing supervision of … a health care provider"). Thus, the Court agrees with Dufresne that Eskridge did not receive "continuing treatment" under the FMLA. [Dkt. 30 at 3–6. *Contra* Dkt. 35 at 6–7.]

Eskridge argues that a reasonable jury could find that she suffered a serious health condition within the meaning of the FMLA. [Dkt. 35 at 7–9.] She highlights that her anxiety and panic attacks caused difficulty breathing and an elevated heart rate, and notes that she sought and received treatment for anxiety in 2020 and 2021. [*See id.* (distinguishing cases Dufresne cites on these bases).] But even if a jury could find that Eskridge's symptoms incapacitated her, the incapacitation began no earlier than January 2021, when she began to experience severe symptoms from wearing a mask. [Dkt. 36 ¶¶ 29, 32; Dkt. 43 ¶¶ 15, 19–20.] Because Eskridge had not undergone "continuing treatment" as defined by statute and regulations as of January 2021 and did not undergo such treatment afterward, no matter how serious her symptoms were in January 2021, she was not entitled to leave. 29 U.S.C. §§ 2611(11), 2612(a)(1)(D); *see Ziccarelli*, 35 F.4th at 1084 (explaining that entitlement to leave is an essential element of an FMLA interference claim).

Eskridge also argues that Dufresne's failure to take further steps to evaluate whether she was entitled to FMLA leave supports her claim. [Dkt. 35 at 9–11.] But the same problem arises—regardless of how much or little Dufresne investigated Eskridge's FMLA eligibility, if she was not in fact eligible for FMLA leave, she cannot prevail on an interference claim. *Ziccarelli*, 35 F.4th at 1084. The same goes for the fact that an employer may require that an FMLA leave request "be supported by a

certification issued by the health care provider of the eligible employee." 29 U.S.C. § 2613(a). First, by its terms, this section is permissive. An employer *may* require an employee to provide a certification, but it need not do so. Likewise, the employer may seek a second opinion under 29 U.S.C. § 2613(c), but the statute does not impose that requirement. "Of course, an employer who bypasses this step risks denying FMLA leave to an employee who is entitled to the leave, rendering the employer liable for lost wages, benefits, interest, attorney's fees, costs and other damages as provided by 29 U.S.C. § 2617." *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 911 (7th Cir. 2008).[2] But an employer that denies an FMLA claim of an employee who is not entitled to leave is not liable for an FMLA interference claim. *See Ziccarelli*, 35 F.4th at 1084. As explained above, Eskridge does not satisfy the statutory definition of a serious medical condition, 29 U.S.C. § 2611(11), so her interference claim fails even though Dufresne did not go through the procedures outlined in 29 U.S.C. § 2613.

## B.    ADA Disparate Treatment and Failure to Accommodate

The ADA makes it unlawful for a covered employer to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). "There are two types of discrimination claims under the ADA. First is a disparate treatment claim,

---

[2]    Eskridge submits that "[t]wo district courts have held that [29 U.S.C.] § 2613 outlines the exclusive procedure for challenging an employee's medical certification, so that an employer who fails to challenge a sufficient certification when it is submitted is estopped from making a similar challenge in subsequent litigation." [Dkt. 35 at 9–10.] The Court takes no position on this issue. Even if estoppel principles apply, the estoppel would extend only to the accuracy of the medical findings underlying the certification from the employee's doctor, not whether those findings would entitle the employee to FMLA leave. *Darst* makes this point implicitly, recognizing that an employer might deny FMLA leave to an employee who submits a § 2613(a) certification is not necessarily liable for an FMLA violation. 512 F.3d at 911.

where the plaintiff alleges the employer treated him or her differently because of the plaintiff's disability. The second is the employer's failure to provide a reasonable accommodation." *Tonyan v. Dunham's Athleisure Corp.*, 966 F.3d 681, 687 (7th Cir. 2020) (cleaned up). Eskridge brings both types of claims, each of which requires her to show that she is a "qualified individual." *Id.* (disparate treatment); *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 224 (7th Cir. 2015) (failure to accommodate). A jury could not find that Eskridge is a qualified individual, so her claims fail.

The ADA defines "qualified individual" as one "who, with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. § 12111(8). "Whether a function is essential is a question of fact, not law." *Tonyan*, 966 F.3d at 687 (citation omitted). Here, it is undisputed that "interacting with customers in a retail environment" was an essential function of Eskridge's role [Dkt. 36 ¶ 7]; during the height of the COVID-19 pandemic, Dufresne employees who worked indoors within six feet of others—including Eskridge—needed to wear masks while at work [*id.* ¶¶ 8–9]; and as of January 2021, Eskridge could not wear a mask [*id.* ¶¶ 15–17]. Based on these facts, unless a reasonable accommodation would have let Eskridge interact with customers in a retail environment—an essential function— she was not a "qualified individual." *Tonyan*, 966 F.3d at 687; *Curtis*, 807 F.3d at 224.

No reasonable jury could find that a reasonable accommodation was available. Eskridge mentions two. First, Dufresne could have given her an "accommodation in the form of medical leave for approximately 3 months." [Dkt. 35 at 17.] But Seventh Circuit precedent establishes that an extended leave of absence is not a reasonable

12

accommodation. "The ADA is an antidiscrimination statute, not a medical-leave entitlement. … [T]he term 'reasonable accommodation' is expressly limited to those measures that will enable the employee to work. An employee who needs long-term medical leave *cannot* work and thus is not a 'qualified individual' under the ADA." *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 479 (7th Cir. 2017) (citation omitted). Eskridge was not entitled to FMLA leave, and under *Severson*, long-term medical leave cannot be recast as a reasonable accommodation under the ADA. *Id.* Second, Dufresne could have considered allowing employees who could not work in masks to wear "less restrictive face coverings." [Dkt. 35 at 17.] But Eskridge does not argue, let alone point to evidence in the record, that allowing her to wear a different face covering would have been a reasonable accommodation; she merely asserts that Dufresne should have considered it. [*Id.*] Without evidence, Eskridge could only speculate about whether this would be a reasonable accommodation, and speculation cannot defeat summary judgment. *See Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 959 n.5 (7th Cir. 2021).

Eskridge also faults Dufresne for failing to participate in an interactive process to identify a reasonable accommodation. [Dkt. 35 at 16–17.] The required interactive process "brings the employee and employer together in cooperation to identify the employee's precise limitations and discuss accommodation which might enable the employee to continue working." *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1178 (7th Cir. 2013) (cleaned up), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016). "Failure to engage in this 'interactive process' cannot

13

give rise to a claim for relief, however, if the employer can show that no reasonable accommodation was possible." *Hansen v. Henderson*, 233 F.3d 521, 523 (7th Cir. 2000) (citations omitted). No reasonable jury could find that a reasonable accommodation was available here, so even if Dufresne failed to engage in the interactive process, it would still be entitled to summary judgment. *See id.*[3]

No reasonable accommodation would have allowed Eskridge to perform the essential functions of her job, so a reasonable jury could not find that she was a qualified individual under the ADA. 42 U.S.C. § 12111(8). Therefore, Dufresne is entitled to summary judgment on Eskridge's ADA disparate treatment and failure to accommodate claims. *See Tonyan*, 966 F.3d at 687; *Curtis*, 807 F.3d at 224.

### C.    ADA and FMLA Retaliation

The ADA and FMLA "prohibit employers from retaliating against employees who assert their statutory rights." *Trahanas v. Nw. Univ.*, 64 F.4th 842, 855 (7th Cir. 2023) (quotation omitted). Although these are different statutes, the analyses for a retaliation claim overlap. *Id.* at 856. "Retaliation claims brought under either act require three familiar elements: (1) the employee engaged in statutorily protected

---

[3]      Further, the undisputed facts show that Dufresne took steps to identify a reasonable accommodation It provided her with a form that permitted her doctor to suggest reasonable accommodations, but Dr. Shah indicated that no accommodation would enable Eskridge to perform the essential functions of her job. [Dkt. 31-13; Dkt. 36 ¶ 16.] Miller spoke on the phone with Eskridge about possible accommodations. [Dkt. 36 ¶ 15.] Sullivan also internally checked about the possibility of transferring Eskridge to a remote sales position with the E-Team, but Sullivan was told that the only openings were in the Houston or Memphis offices. [*Id.* ¶ 19; Dkt. 31-14.] In contrast, Eskridge and Dr. Shah suggested no accommodations that would permit Eskridge to continue working for Dufresne. If further discussion could have identified a reasonable accommodation, it was Eskridge, not Dufresne, who needed to take the next step in the interactive process. *Cf. Cloe*, 712 F.3d at 1178 ("If this process fails to lead to reasonable accommodation of the disabled employee's limitations, responsibility will lie with the party that caused the breakdown." (quotation omitted)).

activity; (2) the employer took adverse action against the employee; and (3) the protected activity caused the adverse action." *Id.* (cleaned up). To prove a retaliation claim, Eskridge "must muster enough direct and/or circumstantial evidence to show that her employer's action"—terminating her—"was retaliatory. Such circumstantial evidence may include suspicious timing or evidence the employer's proffered reason for the adverse action was pretextual." *Crain v. McDonough*, 63 F.4th 585, 593 (7th Cir. 2023) (cleaned up). Dufresne argues that the record cannot support a finding of retaliatory animus as to either claim. [Dkt. 30 at 7–8, 14–15.] The Court agrees.

Eskridge faces a significant hurdle at the outset. "It is well-settled … that an employer may terminate an employee for any reason, good or bad, or for no reason at all, as long as the employer's reason is not proscribed by a Congressional statute." *Kahn v. U.S. Sec'y of Lab.*, 64 F.3d 271, 279 (7th Cir. 1994) (citations omitted). Dr. Shah informed Dufresne that Eskridge could not perform the essential functions of her position because she could not wear a mask. The FMLA did not entitle Eskridge to leave because she was not undergoing continuing treatment, and Dufresne had no way to reasonably accommodate her in her current job. Terminating an employee who cannot perform her job duties with or without an accommodation and is not entitled to long-term medical leave is a nonretaliatory reason that precludes liability unless it is pretextual, "an attempt to mask a discriminatory reason with a legitimate excuse." *Crain*, 63 F.4th at 593 (quotation omitted). To succeed, a jury must be able to find that Dufresne terminated Eskridge at least in part because she requested FMLA leave, ADA accommodation, or both, not because she was unable to work.

A jury could not make that finding. Eskridge argues that Sullivan's failure to investigate whether she was entitled to FMLA leave and ADA accommodation, plus the timing of Dufresne's decision to terminate her, supports a finding of retaliation. [Dkt. 35 at 12–14.] On Eskridge's account, after she spoke to Miller about her anxiety and inability to wear a mask, "Miller explained … that [Eskridge] could not work with [Dufresne] if she could not wear a mask." [*Id.* at 12.] Then, when Eskridge asked about FMLA leave, Miller told her that she was not eligible. [*Id.*] Even after Dr. Shah submitted documentation supporting Eskridge's inability to work while wearing a mask and asked that Eskridge be placed on leave for three months, Miller continued to take the position that if Eskridge could not wear a mask, Dufresne would terminate her employment. [*Id.*] Sullivan did not consider Eskridge to be "incapacitated" under the FMLA even though her anxiety preventing her from masking. [*Id.* at 13.] Miller and Sullivan did not "review[ ] any medical documentation" to make these decisions, and Sullivan "personally believed anxiety is not a serious health condition." [*Id.*]

None of these actions suggests unlawful retaliatory animus. Dufresne was correct that Eskridge was not entitled to FMLA leave or long-term leave as an ADA accommodation, but even if Miller or Sullivan had wrongly determined that Eskridge was ineligible for three months of leave under the FMLA or ADA, it would not support a finding of retaliation. True, Dufresne might be liable if it wrongly denied Eskridge benefits to which she was entitled, *cf., e.g.*, *Darst*, 512 F.3d at 911, but that liability would not be for retaliation. Terminating an employee who cannot work and is not protected by statute is not, by itself, retaliatory. *See Kahn*, 64 F.3d at 279. To show

retaliation in the face of a valid reason for termination, Eskridge must show pretext, but "[p]retext is not just faulty reasoning or mistaken judgment on the part of the employer; it is a lie, specifically a phony reason for some action." *Crain*, 63 F.4th at 593 (cleaned up). If Miller and Sullivan sincerely believed that Eskridge was not eligible for FMLA benefits or ADA accommodations—and no evidence suggests they did not—then Eskridge's retaliation claims fail.[4]

The timing of events does not change matters. "[S]uspicious timing is rarely enough to create a triable issue," and "[w]hen suspicious timing alone is insufficient to carry the plaintiff's burden, a plaintiff may survive summary judgment if there is other evidence that supports the inference of a causal link." *Igasaki*, 988 F.3d at 959–60 (cleaned up). Because the other evidence she points to does not suggest retaliatory animus, Eskridge must rely on suspicious timing alone to defeat summary judgment. Although there is no "bright-line rule about how close the events must be to establish causation," *Xiong v. Bd. of Regents of the Univ. of Wis. Sys.*, 62 F.4th 350, 355 (7th Cir. 2023) (quotation omitted), where the Seventh Circuit has recognized that timing alone can support an inference of retaliation, the intervals between the protected conduct and the adverse employment action are typically no more than a few days, *see, e.g.*, *id.*; *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012).

Here, even assuming that the timing could be characterized as suspicious, Eskridge's invocation of her FMLA and ADA rights came more than a week before her termination. Eskridge asserts that she raised the possibility of FMLA leave on

---

[4]    Dufresne's invitation for Eskridge to reapply for a position if her restrictions changed or if the mask mandate was lifted [Dkt. 36 ¶ 22] further weakens any inference of retaliation.

January 11, 2021, and it is undisputed that she and Miller discussed possible ADA accommodations during the week of January 14, 2021. [Dkt. 36 ¶¶ 13, 15.] Eskridge's employment was not terminated until January 25, 2021. [*Id.* ¶ 22.] That timing is not sufficient, by itself, to support an inference of retaliation. *See Xiong*, 62 F.4th at 355; *Igasaki*, 988 F.3d at 959.[5]

Because no reasonable jury could find that Eskridge's request for FMLA leave or ADA accommodations constituted a substantial part of Dufresne's decision to terminate her employment, Dufresne is entitled to summary judgment on Eskridge's retaliation claims. *See Trahanas*, 64 F.4th at 855.

## IV. Conclusion

For the foregoing reasons, Dufresne's motion for summary judgment [Dkt. 29] is granted. The Court has construed the record in the light most favorable to Eskridge in ruling on Dufresne's motion. Therefore, when the Court views the record in the light most favorable to Dufresne, it is clear that Eskridge is not entitled to summary judgment, so her motion for summary judgment [Dkt. 26] is denied. Judgment shall enter in favor of Dufresne and against Eskridge. Civil case terminated.

Enter: 22-cv-4998
Date: July 15, 2024

_____
Lindsay C. Jenkins
United States District Judge

---

[5] The Court is also skeptical that the timing could be characterized as suspicious. It is not unexpected that the decision to deny leave and terminate an employee who can no longer fulfill her job duties would occur over the course of a few weeks.